UNITED STATES of America,
Plaintiff-Appellant,
Cross-Appellee,

v.

Anthony ACCARDO, et al.,
Defendants-Appellees,
Cross-Appellants.

No. 82–5380.

United States Court of Appeals,
Eleventh Circuit.

Jan. 8, 1985.

Thornberry, Senior Circuit Judge, sitting by designation, concurred specially and filed opinion.

Karen L. Atkinson, Asst. U.S. Atty., U.S. Dept. of Justice, Robert J. Erickson, Washington, D.C., for plaintiff-appellant, cross-appellee.

Carl Walsh, Chicago, Ill., for Accardo.

Joseph Beeler, Miami, Fla., for Paul A. DiFranco.

Wm. P. Cagney, III, Miami, Fla., for Angelo Fosco.

Betar & Petit, David K. Schmitt, Sam Betar, Chicago, Ill., for Paul Fosco.

Arnold Kanter, Barry J. Freeman, Kenneth P. Ross, Chicago, Ill., for Pinckard.

Thomas D. Decker, Chicago, Ill., for James Norton.

Steiner & Unterman, New York City, for Louis Ostrer.

E. David Rosen, Rosen & Rosen, Miami, Fla., for Alfred Pilotto.

Barry Fallick, New York City, for Bernard Rubin.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

## CORRECTED OPINION

JAMES C. HILL, Circuit Judge:

This appeal requires us to consider the good faith exception to the fourth amendment exclusionary rule, recently established by the Supreme Court in *United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachu-setts v. Sheppard,* — U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In light of these 1984 decisions, we vacate the 1982 district court order, which suppressed evidence seized by officers under a warrant held by the district court to have been insufficiently particular to meet fourth amendment standards, and remand this case to the district court to determine whether those officers acted in good faith.

We briefly summarize the material facts considered by the district court in deciding whether to grant the motion to suppress. Federal agents in Chicago suspected several health care services companies of labor racketeering activities. Their investigation led them to Daniel G. Milano, Jr., a former officer of one of the companies under suspicion, Consultant and Administrators, Inc. (C & A). Milano, whose father was executive vice-president of C & A, told FBI agents that C & A paid labor union officials kickbacks to ensure that all C & A bids for union health services contracts were approved. According to Milano, C & A officials formed two companies, Pinckard and Associates, Inc. (Pinckard), and Fortune Services, to divert revenue from C & A into a kickback fund from which labor leaders were paid. Although Pinckard and Fortune primarily served as conduits for the payoff scheme, the companies also performed the task of verifying eligibility for coverage under the C & A contracts with the unions. Milano fully described the billing procedures used by Pinckard and Fortune, the manner in which illegal payments were made, and the collection of monthly cash contributions from C & A officers for distribution to union officials.

At the conclusion of this investigation, an FBI agent swore out an affidavit in which he recounted Milano's description of the alleged kickback scheme. The affidavit detailed the completeness of the fraud that permeated the business dealings between the companies involved. Based on that affidavit, a federal magistrate in Chicago is-

---

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-tion.

sued warrants authorizing the search of the administrative offices of C & A and Pinckard. Federal agents conducted such a search and seized several volumes of documents from both companies.

Racketeering charges were then filed in the District Court for the Southern District of Florida against various labor leaders and officers of C & A and Pinckard.[1] Shortly after they were indicted, defendants[2] moved to suppress all materials seized in the C & A and Pinckard searches. The district court conducted a suppression hearing, and, finding the warrant issued by the Chicago magistrate "unconstitutionally general," suppressed the corporate records seized from the offices of C & A and Pinckard. At the hearing, the district court did not consider whether there was a good faith exception to the fourth amendment exclusionary rule, nor whether the FBI agents had acted in good faith. The United States subsequently brought this interlocutory appeal pursuant to 18 U.S.C. § 3731 (1976), challenging the district court's suppression order on the ground that the officers had acted in good faith.[3] We now vacate and remand.

Since the district court issued the suppression order in 1982, the Supreme Court

---

1. An independent federal investigation in Miami apparently led authorities there to suspect several of the figures under investigation in Chicago of similar criminal activity in Florida. Indeed, a federal grand jury in Miami issued subpoenas *duces tecum* to various C & A and Pinckard officers and defendant-appellee Di Franco, requiring them to produce most of the materials seized in the search now under attack. The district court ruled that the documents obtained by the subpoena were not tainted by the illegal searches and denied suppression motions as to that evidence. Whether the materials seized in the challenged search are thus subject to the "independent source" rule, *see Segura v. United States,* — U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), or the "inevitable discovery" doctrine, *see United States v. Kroesser,* 731 F.2d 1509 (11th Cir.1984), are questions we need not decide.

   We also see no reason to consider whether defendants-appellees can invoke the interlocutory appeal provisions of 18 U.S.C. § 3731, *see United States v. Moody,* 485 F.2d 531, 534 (3d Cir.1973) (allowing cross-appeal), to challenge the district court's refusal to suppress the evidence obtained by subpoena. Since we vacate the order suppressing the records seized in the C & A and Pinckard searches, the order defendants-appellees seek to appeal may be unnecessary to the district court's disposition of the suppression motions. Whether this is the case depends on how the district court resolves the good faith issue on remand. *See infra,* 1479–80. This court therefore will wait for resolution of that issue and not address herein the question involving invocation of the interlocutory appeal provisions of 18 U.S.C. § 3731.

2. At the time these charges were filed, defendant-appellee Pinckard was president of Pinckard and Associates, Inc.; defendant-appellee Fosco was president of PF Insurance Agency and vice-president of C & A, Inc.; and defendant-appellee Norton was president of C & A, Inc.; and defendant-appellee Di Franco was vice-president of Dental and Vision Care Centers, Inc., a company that allegedly provided kickback monies to receive union health care business. *See* Supp. Record on Appeal at 1–14.

   The district court found that among the twelve named codefendants only Pinckard, Fosco, Norton and Di Franco had standing to challenge the searches. Therefore, they are the only parties to the government's appeal.

3. The Government did not originally challenge the district court's conclusion that the warrants were impermissibly general, *see Stanford v. Texas,* 379 U.S. 476, 481–86, 85 S.Ct. 506, 509–12, 13 L.Ed.2d 431 (1965), instead urging this court to extend our ruling in *United States v. Williams,* 622 F.2d 830 (5th Cir.1980) (en banc), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981), to encompass the officers' actions in this case. *See* Brief for Appellant at 13–26.

   Shortly before this case was orally argued, however, the government submitted authorities that supported the validity of broad warrants covering searches of businesses permeated with fraud. *See, e.g., United States v. Offices Known As 50 State Distributing Co.,* 708 F.2d 1371 (9th Cir.1983). While we chose to dispose of this appeal as it was briefed by all parties, we note that the affidavit supporting the C & A and Pinckard search warrants alleged that Pinckard was incorporated solely as a conduit for the flow of kickback monies. Thus, at least with respect to Pinckard, the magistrate who issued these warrants might have had reason to authorize the seizure of "all corporate records." *See, e.g., United States v. Brien,* 617 F.2d 299, 305–09 (1st Cir.) (approving warrant authorizing seizure of materials that made up "most of the business records" of investment firm), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); *see generally United States v. Wuagneux,* 683 F.2d 1343, 1348–51 (11th Cir.1982) (collecting cases on warrants in context of complex, fraudulent business schemes), *cert. denied,* — U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

has held that there is a good faith exception to the exclusionary rule. In *United States v. Leon* the Supreme Court considered "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 104 S.Ct. at 3409. The Court answered that question by taking yet another look at the remedial objectives thought served by the exclusionary rule. *Id.* at 3413–16. Concluding that the rule remains viable only as a deterrent to police misconduct, the Court held that the costs to the administration of justice of excluding highly probative evidence outweighed any benefits from the rule's deterrent effect where police officers have acted in objectively reasonable reliance on a warrant later found to be defective. *Id.* at 3419–21. With certain well-defined limitations,[4] the rule announced by the Court required suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 3423. Then, turning to the facts before it, the Court found the officers' reliance on the magistrate's determination of probable cause to be reasonable; the warrant was supported by much more than a "bare bones" affidavit and was not seriously challenged by any of the defendants. Under those circumstances, the Court discerned no reason for applying the "extreme sanction of exclusion." *Id.* at 3423.

*Massachusetts v. Sheppard* presented a situation seemingly analogous to the case before this court. In *Sheppard* the trial judge suppressed evidence seized during the execution of a warrant that failed to describe with particularity the items to be seized. 104 S.Ct. at 3428. The Supreme Judicial Court of Massachusetts refused to recognize a good faith exception to the exclusionary rule and affirmed. The Supreme Court reversed, emphasizing that the officers had evidenced their good faith by submitting an affidavit to a judge, who then drafted a warrant authorizing the search. *Id.* at 3429. Any error in failing to meet the particularity requirement of the fourth amendment, the Court held, was committed by the judge, not the police officers. *Id.* Therefore, the officers' conduct was objectively reasonable and well within the bounds of the rule announced in *Leon.*

On the facts considered by the district court at the suppression hearing, the pending appeal is within the good faith exception articulated in *Leon* and *Sheppard.* The agents here "took every step that could reasonably be expected of them." *Id.* As in *Sheppard*, the agents submitted a detailed affidavit to a magistrate in order to secure the search warrants. The affidavit alleged a pervasive fraud that had resulted in the incorporation of a sham business to channel kickback monies to labor officials. In addition, the affidavit was reviewed by several attorneys in the U.S. Attorney's office before it was presented to a magistrate, who found probable cause and issued the warrants. It is not relevant that here, unlike in *Sheppard*, the magis-

---

**4.** The Court explained three instances where, although the officer has acted in good faith, suppression remains an appropriate remedy:

The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown*

*v. Illinois*, 422 U.S. [590] at 610–611, 95 S.Ct. [2254] at 2265–2266 [45 L.Ed.2d 416 (1975)] (POWELL, J., concurring in part); see *Illinois v. Gates, supra*, 462 U.S. [213] at [246], 103 S.Ct. [2317] at [2336] [76 L.Ed.2d 527 (1983)] (WHITE, J., concurring in the judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Cf. *Massachusetts v. Sheppard*, —— U.S., at ——, 104 S.Ct., at ——.

104 S.Ct. at 3422.

trate did not make changes in the warrant or expressly assure the agents that the warrant was adequate. Since the agents here did not use, and did not know that they used, an improper form, they had no reason to expect the magistrate to make changes in the warrant or to especially assure them of its adequacy.

Moreover, the warrant's authorization to seize "all corporate records" does not transgress the limitation on the good faith exception described by the Supreme Court as cases involving warrants "so facially deficient—*i.e.*, failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 104 S.Ct. at 3422. Arguably, "all corporate records" is significantly more general than the "any controlled substance" language contained in the *Sheppard* warrant. 104 S.Ct. at 3427 & n. 2. Even so, this is not dispositive. The question here is not the legal validity of the warrant but the reasonableness of the officers' reliance on it. This is not an instance in which "it is plainly evident that a magistrate or judge had no business issuing a warrant," *id.* at 3429 n. 7 (quoting *Illinois v. Gates*, 462 U.S. 213 at ——, 103 S.Ct. 2317 at 2345, 76 L.Ed.2d 527). In addition, the investigating officers were told by a former C & A executive that Pinckard was a sham corporation. Every indication was that C & A officials were extensively involved in the kickback scheme. This type of complex financial fraud, sometimes referred to as the "paper puzzle," has been held to justify a more flexible reading of the fourth amendment particularity requirement. *See, e.g., United States v. Wuagneux*, 683 F.2d 1343, 1348–50 (11th Cir.1982) (citing cases), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).[5]

▮▮▮ On the facts considered by the district court in deciding whether to grant the motion to suppress, the good faith of the officers would be established. How-

ever, we are mindful that at the time of the suppression hearing *Leon* and *Sheppard* had not been decided, and that the district court did not hold an evidentiary hearing on, nor in any way consider, the issue of the officers' good faith. Although the ultimate question of good faith *vel non* is a legal issue, which this court may resolve, the ascertainment of the facts upon which to base a determination regarding good faith is for the district judge. In *Leon*, the Supreme Court said that in determining whether a police officer acted in good faith, "all of the circumstances ... may be considered." 104 S.Ct. at 3421 n. 23. It is not clear that we have had the opportunity to consider all the circumstances in this case, as no evidentiary hearing was held on the good faith issue. Both parties should be given an opportunity to present evidence touching upon the conduct of the officers. We therefore feel it best to remand the case to the district court, where the parties shall be afforded a hearing on the good faith issue. The district court, guided by *Leon* and *Sheppard*, and this opinion, then may determine whether the officers acted in good faith.

Accordingly, the order of the district court is VACATED and this case is REMANDED for proceedings consistent with this opinion.

THORNBERRY, Senior Circuit Judge, sitting by designation, concurring specially:

Since "[i]t is not clear that we have had an opportunity to consider all the circumstances in this case, as no evidentiary hearing was held on the good faith issue," and "[w]e therefore feel it is best to remand the case to the district court, where both parties shall be afforded a hearing on the good faith issue," I concur only in that portion of the court's opinion which supports the decision to remand the case to the district court.

---

5. In *Wuagneux* the court upheld a warrant that in part authorized the seizure of records of "the receipt and disbursement of kickback funds." *Waugneux*, 683 F.2d at 1350–51. The court emphasized that despite the generality of this de-

scription, it was properly construed as referring to a very special detailed kickback scheme in view of the affidavit that accompanied it. *Id.* This reasoning reinforces the conclusion in the present case.