920 F.2d 934
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Nathaniel HILL, Defendant-Appellant.
 No. 88-3825.
 United States Court of Appeals, Sixth Circuit.
 Dec. 18, 1990.
 
 Before KEITH, KENNEDY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 This case is before the court upon remand from the Supreme Court for further consideration in light of Florida v. Wells, 495 U.S. ----, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Hill v. United States, 110 S.Ct. 1943 (1990). We had held that the inventory search of defendant's automobile did not violate the fourth amendment, and we upheld defendant's conviction for possession with intent to distribute cocaine. United States v. Hill, 878 F.2d 1436 (6th Cir.1989) (unpublished per curiam opinion). Upon the "further consideration" mandated by the Supreme Court's order, we reaffirm our conclusion that the challenged search of Hill's automobile was constitutionally valid. Therefore, we affirm.
 
 I.
 
 2
 On April 27, 1988, Sergeant Larry Baird, an Ohio State Highway Patrol Officer, arrested defendant for driving without a license and took him into custody. Pursuant to the Ohio State Highway Patrol Regulations, Sergeant Baird conducted an inventory search of defendant's automobile. During the search, Sergeant Baird discovered and opened three closed containers: a cheese ball cannister found on the front seat, a velvet whiskey pouch found underneath the front seat, and an opaque plastic storage bag found in the trunk. Sergeant Baird found cocaine base (crack) underneath the false bottom of the cheese ball can; marijuana and cocaine in the whiskey pouch; and $3,000, a loaded gun, and cocaine in the plastic bag.
 
 
 3
 Defendant was charged in a three-count indictment with possession with intent to distribute 198 grams of cocaine base (crack), 21 U.S.C. Sec. 841(a)(1), possession with intent to distribute 120 grams of cocaine, 21 U.S.C. Sec. 841(a)(1), and carrying a firearm during a drug trafficking crime, 18 U.S.C. Sec. 924(c). His motion to suppress the evidence seized during the inventory search was denied by the district court. The court found that the inventory search was conducted pursuant to the policies of the state highway patrol. Thereafter, defendant entered a conditional guilty plea, Fed.R.Crim.P. 11(a)(1), and reserved his right to appeal the district court's denial of his motion to suppress the evidence. Our decision to affirm the district court was United States v. Hill, 878 F.2d 1436 (6th Cir.1989) (unpublished per curiam). Thereafter, the Supreme Court vacated our opinion and remanded for further consideration in light of Florida v. Wells, 495 U.S. ----, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Hill v. United States, 110 S.Ct. 1943 (1990).
 
 II.
 
 4
 Defendant contends the search of his vehicle exceeded the scope of an inventory search permitted by the Ohio regulations. He also alleges that, contrary to the purpose of an inventory search, Sergeant Baird searched the vehicle to gather incriminating evidence.
 
 
 5
 Warrantless inventory searches of automobiles conducted pursuant to standard police procedure are reasonable within the meaning of the fourth amendment. South Dakota v. Opperman, 428 U.S. 364, 372 (1976). In Opperman, the Court found the governmental interests of protecting an owner's property, insuring against claims of lost, stolen or vandalized property and guarding police from danger outweighed the individual's diminished expectation of privacy in the contents of his automobile.
 
 
 6
 In Colorado v. Bertine, 479 U.S. 367, 374 (1987), the Court reiterated that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment."[1] The Court refused to require that the police, before inventorying a closed container, weigh the individual's privacy interest in the container against the possibility that it holds dangerous or valuable items. Instead, the Court reaffirmed the principles set forth in United States v. Ross, 456 U.S. 798 (1982):
 
 
 7
 "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions ... between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand"
 
 
 8
 Bertine, 479 U.S. at 375 (quoting Ross, 456 U.S. at 821). The Court also recognized that police may exercise discretion "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Bertine, 479 U.S. at 375.
 
 
 9
 The Ohio State Highway Patrol Regulations in this case state:
 
 
 10
 1. On the occasion of abandonment, traffic accidents and certain arrest actions, it is necessary for our officers to remove motor vehicles from the scene to a location of greater security. The justification for an inventory which is an administrative function is:
 
 
 11
 a. To protect the owner's property when the owner is unable to do so.
 
 
 12
 b. To protect the officer and the division against possible civil liability.
 
 
 13
 c. O.S.H.P. Rules and Regulations, Article IV, Section 3, Recovered Property, states in part that "a member shall carefully protect and preserve for proper disposition any article or property recovered or turned over to the officer after loss by its rightful owner, held as evidence, taken from a prisoner or otherwise entrusted to the officer's care."
 
 
 14
 d. The scope of the inventory and the level of security for the property which is inventoried is the responsibility of the officer whose signature appears on the appropriate inventory report.
 
 
 15
 e. This Division's policy and procedures are to inventory all vehicles with which we become involved where the owner or agent of the owner is unable to assume control of the property.
 
 
 16
 2. While it cannot be the officer's purpose to look for evidence of crime, if contraband or other incriminating materials are discovered during the course of a required inventory, the officer will take the appropriate enforcement action.
 
 
 17
 3. Recent court opinions have reflected that luggage has a greater expectation of privacy than does a vehicle. Any evidence found via the inventory of the contents of personal luggage is not admissible in court.
 
 
 18
 Ohio State Highway Patrol Regulations (hereinafter Regulations).
 
 
 19
 We previously found that "Sgt. Baird exercised reasonable discretion within the bounds of the Ohio regulations." Hill, slip op. at p. 6. Florida v. Wells, 495 U.S. ----, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), does not require we change our conclusion.
 
 
 20
 In Wells, a Florida Highway Patrol officer forced open a locked suitcase found in the trunk of the arrested defendant's automobile and discovered a garbage bag containing marijuana. The Florida Supreme Court held the trial court erred in denying the motion to suppress the marijuana found in the suitcase because the highway patrol had no policy on the opening of closed containers found during an inventory search and added that police inventory procedures may not be discretionary but, rather, must mandate either all containers be opened or no containers be opened. State v. Wells, 539 So.2d 464, 469 (Fla.1989).
 
 
 21
 The Supreme Court, in Wells, disagreed with the Florida Supreme Court's understanding of the majority opinion in Bertine and observed that, according to Bertine, police may exercise discretion on the basis of standard criteria and for reasons other than suspected criminal activity. 109 L.Ed.2d at 6. The Court reasoned:
 
 
 22
 Our view that standardized criteria or established routine must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory.
 
 
 23
 Id. (citations omitted). After recounting the purposes for inventory searches, the Court held:
 
 
 24
 A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself ... The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.
 
 
 25
 109 L.Ed.2d at 6-7. The Court concluded that since "the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search ... the instant search was not sufficiently regulated to satisfy the Fourth Amendment." Id. at 7.
 
 
 26
 In this case, the Ohio State Highway Patrol had a policy. The policy was "designed to produce an inventory." Wells, 109 L.Ed.2d at 6. It required the officer to inventory the vehicle, Regulations p 1(e), and "carefully protect and preserve ... any article or property recovered." Regulations p 1(c). The reference to articles and property must include closed containers. Indeed, the regulation presumes the contents of personal luggage will be inventoried, but specifies that evidence found inventorying the contents of personal luggage "is not admissible in court."[2] Regulations p 3.
 
 
 27
 If this regulation had been involved in Wells, we believe the Court would not have found there was no policy whatsoever with regard to closed containers. The Court's decision in Wells, a case about a locked suitcase, should not be read to require that police department regulations must address specifically and separately the manner in which arresting officers must handle the inventory of the myriad closed containers that may be found in arrestees' automobiles. In fact, in Wells, the Court said, "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." 109 L.Ed.2d at 6. Here, Sergeant Baird's actions were well within that latitude and were in obedience to Ohio's standardized criteria that police officers will "inventory all vehicles,"[3] Regulations p 1(e), and upon discovery of "incriminating materials ... take appropriate enforcement action." Regulations p 2.
 
 
 28
 AFFIRMED.
 
 
 29
 KEITH, Circuit Judge, dissenting.
 
 
 30
 Because I believe that both parties should be permitted an opportunity to present evidence concerning the propriety of the Ohio Regulations governing inventory searches, I respectfully dissent. In Florida v. Wells, 110 S.Ct. 1632 (1990), a Florida Highway Patrol officer arrested Wells for drunk driving and conducted an inventory search of his automobile. The officer forced open a locked suitcase found inside Wells' car trunk and uncovered a substantial amount of marijuana. See id. at 1634. Affirming the Florida Supreme Court's suppression of the evidence impermissibly seized from Wells' suitcase, the United States Supreme Court stated that "standardized criteria or established routine must regulate the opening of containers found during inventory searches." Id. at 1635 (citations omitted). The Court explained:
 
 
 31
 A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the container's exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.
 
 
 32
 Id. at 1635. The Court then held that because "the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search," the search of Wells' automobile "was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed." Id..
 
 
 33
 After considering the Court's opinion in Wells, I believe that we can no longer approve the district court's July 18, 1988 order denying Hill's motion to suppress evidence seized from his automobile during the inventory search. My review of the record below persuades me that we cannot now say that the Ohio Regulations contained "standardized criteria or [an] established routine" to regulate the opening of closed containers found during inventory searches. See Wells, 110 S.Ct. at 1635.
 
 
 34
 The Ohio Regulations do not contain an "all or nothing" directive instructing patrolmen to open all closed containers or to open no closed containers during inventory searches. See id. at 1635 ("[P]olicies of opening all containers or of opening no containers are unquestionably permissible ..."); Bertine, 479 U.S. at 377 (Blackmun, J., concurring) ("[I]t is permissible for police officers to open closed containers in an inventory search only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle.") (emphasis added). We recognize that "all or nothing" inventory search procedures are not constitutionally required. See Wells, 110 S.Ct. at 1635. The constitutional problem before us, however, is that the Ohio Regulations impermissibly fail to "forbid[] uncanalized discretion to police officers conducting inventory searches." Id. at 1635. See also id. at 1637 (Brennan, J., concurring) ("[A]n inventory search is reasonable under the Fourth Amendment only if it is done in accordance with standard procedures that limit the discretion of the police."). Although the Ohio Regulations implicitly instruct patrolmen not to open personal luggage found during inventory searches, the Ohio Regulations are silent as to the procedure to be followed generally with all other closed containers,[1] such as brown paper bags, cheese ball canisters, velvet whiskey bags or opaque plastic storage bags. Compare Ohio State Highway Patrol Regulations, supra note 1, with Wells, 101 S.Ct. at 1639 (Blackmun, J., concurring) ("A State, for example, consistent with the Fourth Amendment, probably could adopt a policy which requires the opening of all containers that are not locked, or a policy which requires the opening of all containers over or under a certain size, even though these policies do not call for the opening of all or no containers."). On the record presently before us, I must conclude that with the possible exception of personal luggage,[2] the Ohio Regulations impermissibly give individual patrolmen "uncanalized discretion" to open or not to open closed containers encountered during inventory searches. See Wells, 110 S.Ct. at 1635. Thus, by our application of Wells to the facts considered by the district court below, I am persuaded that Sgt. Baird's inventory search of Hill's automobile was insufficiently regulated to satisfy the fourth amendment.
 
 
 35
 As neither party has had an opportunity to offer evidence and argument directed at the standards articulated by the Supreme Court in Wells, it is possible that we have not had an opportunity to consider all of the facts and circumstances of this case. See United States v. Accardo, 749 F.2d 1477, 1481 (11th Cir.1985) (in the aftermath of United States v. Leon, 468 U.S. 3405 (1984), remanding to the district court to allow both parties a hearing on the newly announced good faith exception to the exclusionary rule), cert. denied, 474 U.S. 949 (1985); Wells, 110 S.Ct. at 1636 (explaining that the Florida Supreme Court allowed the Florida Highway Patrol to defend its inventory search procedures by submitting a procedural manual and patrol forms as additional evidence). In light of Florida v. Wells, 110 S.Ct. 1632 (1990), both parties should now be given an opportunity to present evidence and arguments concerning the propriety of the Ohio Regulations governing inventory searches. I would, therefore, VACATE and REMAND this case for further proceedings.
 
 
 
 [1]
 The regulation in Bertine "mandated a 'detailed inventory involving the opening of containers and the listing of [their] contents.' " 479 U.S. at 370
 
 
 [2]
 We express no opinion about the correctness of that observation
 
 
 [3]
 It is not disputed that the expression "inventory all vehicles," as used in paragraph 1(e) of the Ohio Regulations, means an inventory of the contents of vehicles seized
 
 
 [1]
 Because the Ohio Regulations are silent as to the inventory search procedures to be followed for closed containers other than personal luggage, we decline to address the State's silence by proffering our own inventory search procedures. Cf. Nichols v. Pierce, 740 F.2d 1249, 1257 (D.C.Cir.1984) (reviewing the fee shifting provisions of the Equal Access to Justice Act, 28 U.S.C. Sec. 2412, but refusing to substitute "broad interpretive innuendo" for "congressional silence")
 
 
 [2]
 Although the Ohio Regulations state that "[a]ny evidence found via the inventory of the contents of personal luggage is not admissible in court," the Ohio Regulations do not clearly and unambiguously direct police officers not to open all personal luggage. See Ohio State Highway Patrol Regulations (quoted in Hill I, at 5). Moreover, the Ohio Regulations fail to define, with adequate specificity, the term "personal luggage." Cf. Bertine, 479 U.S. at 387 (Marshall, J., dissenting) (arguing that defendant's traditional expectation of privacy in his personal luggage should have been extended to his backpack)