UNITED STATES of America, Plaintiff-Appellee,

v.

Joseph S. TRAVERS, a.k.a. Larry Thomas, Defendant-Appellant.

No. 99-11687.

United States Court of Appeals,

Eleventh Circuit.

Nov. 21, 2000.

Appeal from the United States District Court for the Southern District of Florida.(No. 96-00477-CR-UUB), Ursula Ungaro-Benages, Judge.

Before TJOFLAT, HILL and POLITZ[*], Circuit Judges.

HILL, Circuit Judge:

Joseph Travers was convicted on several counts of mail fraud, equity skimming, money laundering and bankruptcy fraud. Travers was sentenced to 78 month's incarceration and ordered to pay $571,049 in restitution to the Department of Housing and Urban Development. He appeals his conviction and sentence.

I.

Between 1991 and 1995, Joseph Travers obtained title to more than 97 houses by assuming Veterans Administration (VA) and Federal Housing Association (FHA) guaranteed home loans. He did so under a variety of false names and aliases. Travers collected the rents on these properties but never paid on any of the mortgages. He used a series of names on the deeds and filed successive bankruptcy petitions for each name in a successful attempt to forestall foreclosure during which time he would continue to collect the rents. Travers used a series of false identities and mail drops to hide his identity and avoid detection. During the two-year investigation of his activities, federal agents compiled a list of at least 40 VA and FHA mortgages that Travers had assumed, aliases he used in those transactions, mailboxes he had rented, and fraudulent bankruptcy proceedings that he had filed.

Agents arrested Travers on May 8, 1996. On the same day, they executed search warrants at his two properties on Bay Harbor Island, Florida. The agents seized voluminous boxes of documents detailing Travers' equity skimming operation.

Before trial, Travers filed a motion to suppress the evidence found during the searches of his

---

[*]Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

residence and office on the grounds that the warrant authorizing the searches was unconstitutionally over broad and the resulting searches general rather than limited. After an evidentiary hearing, the district court denied the motion, holding that, while the warrant was overly broad, "the agents acted in good faith in drafting and executing the warrant." Travers appeals this decision, which we review *de novo*.[1] *United States v. Accardo,* 749 F.2d 1477 (11th Cir.1985).

## II.

"The right to 'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant [was] [v]ivid in the memory of the newly independent Americans." *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 510, 13 L.Ed.2d 431 (1965). Therefore, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized.*" (emphasis added). The Supreme Court has on numerous occasions reminded us that this constitutional requirement protects against "the use of general warrants as instruments of oppression." *Id.* at 510.

The requirement that warrants particularly describe the place to be searched and the things to be seized makes general searches under them impossible. *Id.* at 512. A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad. *Id.* The resulting general search is unconstitutional. In order to deter such warrants and searches, the Court has held that any evidence so seized must be excluded from the trial of the defendant. *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

The exclusionary rule's deterrent effect is negated, however, where law enforcement officers act in the "objectively reasonable belief that their conduct does not violate the Fourth Amendment." *United States v. Leon,* 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). When an officer has in good faith obtained a search warrant from a judge or magistrate and acted within its scope, "there is no police illegality and thus nothing to deter." *Id.* at 921, 104 S.Ct. 3405. In *Leon,* therefore, the Court carved out an exception to the exclusionary rule for evidence obtained in such a search. *Id.* at 926, 104 S.Ct. 3405.

---

[1]Travers appeals a number of other district court rulings: denial of a continuance; evidence of mail fraud and money laundering sufficient to support jury verdict; no constructive amendment of the indictment; and permitting evidence alleged to violate Travers' rights to remain silent and have counsel at sentencing. We find no merit in any of these allegations of error.

In this case, the district court held that the search warrant for Travers' home, office, and automobile was unconstitutionally over broad. The court also found, however, that the executing agents conducted the searches in good faith, presuming their warrant to be legally valid, and that this reliance was reasonable under the circumstances. The district court concluded, therefore, that the "good faith" exception to the exclusionary rule applied in this case and the evidence seized in the searches was admissible at trial.

Travers contends that this decision was wrong for four different reasons: first, the good faith exception is inapplicable to excuse general searches; second, even if it were applicable, the district court incorrectly shifted the burden to Travers to prove the agents acted in bad faith; third, the agents did not act in good faith because they deliberately induced the magistrate to issue an over broad warrant; and fourth, agents did not execute the search in good faith because they deliberately failed to stay within the warrant's limits. The United States does not contest the district court's holding that the warrant was over broad. Therefore, the issue for our review is whether the good faith exception applies in this case to excuse the unconstitutionally over broad warrant. We conclude that it does.

III.

The good faith exception may be applied to a search conducted pursuant to an overly broad warrant. *Accardo,* 749 F.2d at 1481. The officers do not act in objective good faith, however, if the warrant is so overly broad on its face that the executing officers could not reasonably have presumed it to be valid. *Id.*

The warrant in this case permitted the officers to search for all documents involving real estate, litigation, property, mailings, photographs and any other material reflecting identity, and anything reflecting potential fraud. Pursuant to the warrant, the executing officers seized copies of warranty deeds and other documents reflecting Travers' use of false identities to purchase properties; notary public seals for signatures that Travers forged on various deeds and other legal documents; passports, birth certificates, drivers licenses, and credit cards issued in various names; business cards for businesses in various names; letters to tenants written by Travers using both his names and aliases; copies of bankruptcy pleadings, letters to bankruptcy courts, and other filings reflecting Travers' attempts to delay foreclosures; and various other documents concerning Travers' use of aliases, mail drop boxes, and false addresses to avoid detection.

Although the district court ultimately held the warrant overly broad, it characterized its conclusion as a "close call." We agree. This case involves a complex scheme to commit financial fraud concerning real property. The charges include mail fraud, bankruptcy fraud, equity skimming, and money laundering. A

wide variety of documents were relevant to prove this scheme—deeds, loan papers, legal pleadings, identity papers and cards, and mailing receipts and papers. Thus, the agents applied for and received a warrant which cut a wide swath through Travers' papers and documents. In *Accardo,* we recognized that cases involving "complex financial fraud ... justify a more flexible reading of the fourth amendment particularity requirement." *Id.* citing *United States v. Wuagneux,* 683 F.2d 1343, 1348-50 (11th Cir.1982)(applying good faith exception to a warrant which authorized seizure of "all corporate records"). Thus, the warrant in this case, even if subsequently determined by the district court to be overly broad, was not "so facially deficient—*i.e.,* failing to particularize the place to be searched or the things to be seized—that the executing officers could not have reasonably presumed it to be valid." *See Accardo,* 749 F.2d at 1481, citing *Leon,* 468 U.S. at 923, 104 S.Ct. 3405. The application of the good faith exception to the exclusionary rule, therefore, is not precluded in this case by a warrant that no reasonable officer could have relied upon.

Travers also contends that the district erred in finding that the agents obtained and executed the warrant in subjective good faith. He claims that the agents intentionally deceived the issuing magistrate by omitting details of their investigation thereby inducing him to grant an overly broad warrant. He also alleges that they deliberately exceeded the scope of their warrant in the items seized.

Whether the officers acted in subjective good faith in obtaining and executing the warrant is a mixed question of fact and law. While the ultimate conclusion of good faith is a legal one, findings of fact serve as the predicate for this conclusion. In order to hold that the officers acted in good faith in this case, the district court necessarily found as a matter of fact that the agents neither intentionally deceived the issuing magistrate by omitting details regarding the nature of their investigation, nor deliberately exceeded the scope of their warrant in the items seized during the searches. The agents testified unequivocally that they consulted with the United States Attorney in drafting the warrant application and included all information that they and she believed necessary to establish sufficient probable cause to support the warrant application. The supervising agent testified that he instructed the other agents regarding items to be seized according to his understanding of the warrant. The searching agents testified that there were documents strewn throughout Travers' residence and office with no apparent organization. In their effort to take only what was authorized by the warrant, they reviewed documents. *United States v. Slocum,* 708 F.2d 587, 604 (11th Cir.1983) (brief perusal necessary to determine relevance). The district court credited all this testimony. We find nothing in the record that would indicate that these factual findings that the officers obtained the warrant in cooperation with the United

States Attorney who advised them on the requirements for showing probable cause and conducted their search in a conscious effort to stay within its limits are clearly erroneous. *United States v. Green,* 40 F.3d 1167, 1170 (11th Cir.1994). Nor do we disagree with the district court's legal conclusion that the officers, therefore, acted in good faith.[2]

IV.

We hold that the district court did not err in holding that the good faith exception to the exclusionary rule applies to excuse the overly broad warrant at issue in this case. We find no merit in Travers' other allegations of error. Accordingly, Travers' conviction and sentence are due to be AFFIRMED.

---

[2]We find no merit in Travers' contention that the district court shifted the burden to the defendant to show bad faith. The single comment by the district court pointed to by Travers does not support his allegation. On the contrary, the district court held a hearing for the specific purpose of permitting the government to call witnesses and establish the good faith of the officers.