RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0187p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-5182

THOMAS RUSSELL TACKETT,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 05-10030—James D. Todd, Chief District Judge.

Submitted: April 18, 2007

Decided and Filed: May 22, 2007

Before: ROGERS and COOK, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

## OPINION

_____

COOK, Circuit Judge. Thomas Russell Tackett appeals his sentence of two years' probation for possession of an unregistered silencer, possession of a silencer not identified by a serial number, and possession of an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5841, 5861(d), 5861(i), and 5871. Tackett claims that the district court erred in denying his Motion to Suppress because the warrantless search of his bags revealing the firearm and paraphernalia did not constitute a proper inventory search. We disagree, finding that the search was reasonable for substantially the same reasons that the district court articulated.

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

I.

On June 21, 2004, Thomas Russell Tackett's vehicle ran off the road and flipped over in Hardin County, Tennessee. Tackett testified that he "crawled" up the hill away from his car carrying a backpack and a computer bag. A Good Samaritan stopped and summoned medical assistance, then stayed with Tackett as various law enforcement officers responded, followed by an ambulance. While officers and others waited with Tackett, he fell in and out of consciousness, yet he seemed worried about a dark-colored bag sitting on the ground nearby. During an inventory search, Sheriff's Deputy Billy Franks opened this bag and found the silencers and unlawful firearm at issue in this case.

Accounts conflicted concerning both when Franks opened the bag and whether Tackett carried one bag or two up the hill. State Trooper Steve Cornelius spoke with Tackett in the ambulance and recovered at least one handgun for which Tackett held a permit. Tackett suggested at the suppression hearing that finding the handgun prompted officers to continue searching for contraband. By contrast, officers testified that the search took place before they recovered Tackett's legal gun. Additionally, they cited a universally applicable policy of inventorying all items following an accident. Tackett responded that, contrary to any policy, officers inconsistently released one bag to his coworker, while inventorying the other. The district court ultimately rejected Tackett's version of the facts because Tackett did not call the coworker to corroborate his story and because witnesses' testimony about Tackett's post-accident confusion undermined his account.

The district court denied Tackett's Motion to Suppress, concluding that "the Fourth Amendment simply did not require Deputy Franks to choose between giving the backpack to a stranger, leaving the backpack on the road, or putting the backpack in his car or at the station without knowledge of the backpacks' [sic] contents."

II.

In considering the denial of a motion to suppress, this court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Davis*, 430 F.3d 345, 351 (6th Cir. 2005) (citing *United States v. Akridge*, 346 F.3d 618, 622 (6th Cir. 2003)). Moreover, this court views the evidence in the light most favorable to the government. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

The Fourth Amendment proscribes warrantless searches and seizures. U.S. CONST. amend. IV. But, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 126 S. Ct. 1943, 1947 (2006).

One recognized exception to the warrant requirement permits law enforcement officers to conduct inventory searches, including the contents of closed containers, so long as they do so pursuant to standardized procedures. *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987). This exception recognizes that in addition to investigating crime, officers have an established caretaking role vis-à-vis the public. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976). Inventory searches further legitimate goals of protecting property from theft or damage, preventing property disputes between the owner and police, and mitigating safety risks inherent in taking possession of unknown items. *Id.* at 369. But officers must conduct a permissible inventory search in good faith, not as a pretext for criminal investigation. *See Bertine*, 479 U.S. at 372. In conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy. *See Florida v. Wells*, 495 U.S. 1, 4 (1990) (stating that police must follow an established routine, not engage in "rummaging"). Nonetheless, officers may exercise some "judgment based on concerns related to the purposes of an inventory search"; for example, they may decide to open particular

containers if they cannot determine the contents. *Id.* Further, officers' suspicion that they may find contraband does not invalidate an otherwise proper inventory search. *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998).

Tackett offers three reasons that the inventory exception to the warrant requirement does not apply. First, he argues the evidence of an inventory policy was insufficient. But officers testified at length that they relied on a standard policy of inventorying all personal items and opening containers, with aims of attributing property ownership, protecting property, and preventing false claims. Franks stated that he would not release personal effects to anyone but a relative or spouse, and even if he did pass a bag to someone, he would inventory it to "cover myself and the sheriff's department." Whether a police department maintains a written policy is not determinative, where testimony establishes the existence and contours of the policy. *See United States v. Player*, 201 F. App'x 331, 334 (6th Cir. 2006) (accepting officers' testimony as proof of policy); *Lumpkin*, 159 F.3d at 987-88 (same). Thus, the evidence sufficiently supported the existence of an inventory policy.

Second, Tackett argues that even if the police had an established inventory policy, his asserted privacy interest outweighs the police department's interest in opening the bag. More to the point, he insists that, in general, the police rely *post hoc* on such policies simply to legitimize their investigatory motives. The Second Circuit's decision in *United States v. Markland* addressed and rejected a similar claim, and we find its analysis persuasive. 635 F.2d 174 (2d Cir. 1980). In *Markland*, the court considered an inventory conducted after a driver lost control of his jeep. *Id.* at 175. When the jeep turned over, objects including a zippered beverage container flew out the windows of the jeep. *Id.* When a state trooper picked up the container, it felt heavier than he expected, so he opened it and found stolen packages from the driver's employment at the post office. *Id.* The Second Circuit rejected the driver's argument that police departments should take a "hands-off" approach to private property in order to eliminate their potential liability for lost, stolen, or damaged items. *Id.* at 176. Instead, the Second Circuit held that police officers' duty to protect citizens' property and prevent crimes justified the practice of inventory searches. *Id.* Moreover, officers have the right to protect themselves. *See id.* ("This impersonal package could have contained anything from beer to bullion or a bomb. Its contents might have been perishable, valuable, or dangerous.").

The court did recognize, as we do, that some situations create a greater expectation of privacy. To take two examples, a repository of personal effects could deserve more privacy than a generic container, or an individual could manifest her privacy expectations with an objective signal. *See id.* at 177. Neither situation applies here. The large backpack in this case is not akin to a "repository of personal effects," such as a purse.

Tackett contends that in removing the bag from the car and carrying it with him to the truck, he manifested his privacy interest in the bag. But Franks testified that although Tackett removed the bag from his car, he eventually left it on the road, where it could have been damaged, lost, or stolen. Although Tackett may have had a greater privacy expectation for the backpack than for other items in plain sight in his car, he never gave the police any clear signal asserting his privacy.

Third, Tackett cites Tennessee law that he claims bars the police department's practice of inventorying and removing belongings unless relatives are present. According to at least two decisions, the police must deliver belongings to third parties, rather than impound them, at the owner's request. *See Drinkard v. State*, 584 S.W.2d 650, 652-53 (Tenn. 1979); *State v. Lunsford*, 655 S.W.2d 921, 923-24 (Tenn. 1983). Even assuming that Tackett did not waive this argument by failing to raise it in the district court, this court has already decided that any such breach of state law, in the absence of a federal constitutional violation, is to be remedied in state court. *See United States v. Vite-Espinoza*, 342 F.3d 462, 470-71 (6th Cir. 2003). That is, *Vite-Espinoza* concluded that

if a department conducted an invalid inventory search under Tennessee law, but not under federal constitutional law, the defendant could potentially bring a civil action in state court, but not obtain a federal evidentiary exclusion. *Id.*

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.