NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0537n.06

No. 10-3180

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 03, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| JOCQUE D. BALLARD, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Jocque Ballard appeals his conviction for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Ballard argues that the district court erred in denying his motion to suppress evidence discovered during an inventory search of his vehicle. We affirm.

I.

In the early morning of July 19, 2009, police officers Scott Dendinger and J. Bays were on patrol in a residential neighborhood of Canton, Ohio. At approximately 1:30 a.m., Officer Dendinger observed a vehicle, now known to be driven by defendant Ballard, traveling at what appeared to be a high rate of speed. Suspicious, the officers followed the vehicle in their marked patrol car, activating a dash-board camera to record all subsequent events.

Ballard, aware of the presence of the patrol car, traveled at an appropriate speed. However, after making several signaled turns, Ballard pulled his vehicle to the curb and parked without signaling. Based upon this traffic violation, the officers performed a traffic stop of Ballard and his vehicle.

During the stop, the officers checked the validity of Ballard's driver's license by using the LEADS police database. LEADS indicated that Ballard's driver's license was suspended for lacking insurance or financial responsibility (commonly referred to as an "FRA" suspension). Under Ohio law, "[n]o person shall operate, or permit the operation of, a motor vehicle . . . , unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle[.]" Ohio Rev. Code Ann. ("ORC") § 4509.101(A)(1). Failure to maintain proof of financial responsibility may result in an FRA suspension. ORC § 4509.101(A)(2)(a). Driving while under an FRA suspension is classified as a misdemeanor offense. ORC § 4510.16.

Officer Dendinger testified at the suppression hearing that, pursuant to standard police procedure, Ballard's FRA suspension required that his vehicle be towed and impounded. Prior to the impound, police department policy further required that officers conduct an inventory search of Ballard's vehicle to document its contents.

During the inventory search of Ballard's vehicle, a firearm was found beneath the driver's seat. In response to this discovery, Officer Dendinger asked Ballard, who was detained in the back

seat of the patrol car, why he had not informed the officers of the presence of the firearm. At this time, Ballard had not received *Miranda* warnings.[1]

Following the firearm's discovery, Ballard was placed under arrest and transported to the Canton police headquarters. During this commute, Ballard initiated a conversation with the officers by asking, "what would have been the difference if I had said [the firearm] was in [the vehicle]?" Officers informed Ballard that he still would have been arrested.[2] A few weeks later, after receiving *Miranda* warnings, Ballard was interviewed by an FBI agent. During this interview, Ballard acknowledged his possession of the firearm.

On September 10, 2009, Ballard was indicted on a single count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). In October 2009, Ballard filed a motion to suppress the evidence and statements stemming from the inventory search of his vehicle, asserting that the search was done in violation of his Fourth Amendment rights. Following the submission of the parties' briefs, the district court convened a hearing on the motion, receiving testimony from Officer Dendinger and Ballard, and reviewing the dash-board video recording. At the conclusion of the hearing, the district court denied Ballard's motion, holding that the discovery of the firearm, and the statements stemming therefrom, were the result of a constitutionally-permissible inventory search.

---

[1]The government did not seek to introduce Ballard's un-*Mirandized* statements in response to this inquiry.

[2]The district court held that because Ballard initiated this conversation with the officers, there was no *Miranda* violation. Ballard does not challenge this finding on appeal.

On November 16, 2009, Ballard entered a conditional guilty plea, reserving the right to appeal from the district court's denial of his suppression motion. Thereafter, Ballard was sentenced to 92 months of incarceration, to be followed by three years of supervised release. Final judgment was entered on February 9, 2010, and this timely appeal followed.

II.

Ballard argues that the district court erred in denying his motion to suppress evidence seized during the inventory search of his vehicle and all evidence derived therefrom. When reviewing a district court's ruling on a motion to suppress, we review findings of fact for clear error and legal conclusions de novo. *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). In addition, "[w]hen the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (internal quotation marks and citation omitted).

III.

The Supreme Court has long recognized that law enforcement officials may make a warrantless inventory search of a legitimately seized vehicle, provided that the property inventory is conducted according to standardized criteria or an established routine. *Colorado v. Bertine*, 479 U.S. 367, 371-74 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). These searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372. Vehicle inventory searches are an exception to the Fourth Amendment's probable cause

requirement and are valid if conducted in accordance with standard police procedures. *Id.* at 371-72; *United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994).

The inventory search performed in this case was constitutionally permissible because it was conducted in conformity with established policy and procedures. After stopping Ballard for failure to signal,[3] the officers discovered that he was subject to an FRA suspension. According to the unrefuted testimony of Officer Dendinger, standard Canton Police Department procedure requires the impound and inventory search of all vehicles found to be operated under an FRA suspension. Indeed, as a result of the suspension, Ballard was prohibited from removing his vehicle from its then current location. What's more, Ballard was similarly prohibited from requesting a third-party to remove his vehicle. *See* Canton, OH, Codified Ordinances § 335.072 ("No person, whose driver's or commercial driver's license . . . has been suspended or canceled [for failure to provide proof of financial responsibility], shall operate any motor vehicle within this Municipality, *or knowingly permit any motor vehicle owned by the person to be operated by another person in the Municipality*, during the period of the suspension or cancellation[.]") (emphasis added).[4] In addition, the inventory search itself was conducted within the bounds proscribed by Canton Police Department policy. *See*

---

[3]On appeal, Ballard does not contest that probable cause existed to support the stop of his vehicle for the failure to signal prior to parking. *See* Canton, OH, Codified Ordinances § 331.14 ("No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal[.]").

[4]A third-party may operate a vehicle owned by an individual under an FRA suspension if they have proof of financial responsibility "with respect to that driver's operation of that vehicle." ORC § 4509.101(A)(1). Here, there is no evidence indicating that any individual obtained proof of financial responsibility in order to operate Ballard's vehicle.

General Order No. 38, at 3 (Effective Sept. 1, 1991) (limiting inventory searches to the interior of the vehicle, the trunk if keys are available, unlocked interior compartments, locked interior compartments if keys are available, and unlocked containers within the vehicle).

Despite the officers' adherence the police department policy and procedure, Ballard asserts that the impound of his vehicle was unconstitutional because: (1) the officers were granted "total discretion" in deciding whether to impound the vehicle, and (2) the impound was unnecessary because the vehicle was parked in a legal parking spot. Both arguments are without merit.

Ballard's assertion that the officers had unfettered discretion in deciding whether to impound his vehicle is factually incorrect. It is undisputed that Canton's Codified Ordinances provide officers with discretionary authority to impound a vehicle operated under a suspended license. *See* Canton, OH, Codified Ordinances § 303.08 ("Police officers . . . are authorized to provide for the removal and impounding of a vehicle under the following circumstances: . . . (i) When any vehicle has been operated by any person who is driving without a lawful license or while his license has been suspended or revoked."); General Order No. 38 (same). However, according to the unrebutted testimony of Officer Dendinger, when a driver is subject to an *FRA suspension*, the officers have no discretion and are required to impound the vehicle.[5] This policy is consistent with Ohio law because *no person* may operate a vehicle owned by an individual under an FRA suspension unless specifically authorized to do so. *See* ORC § 4509.101(A)(1); Canton, OH, Codified Ordinances §

---

[5]"Whether a police department maintains a written policy is not determinative, where testimony establishes the existence and contours of the policy." *Tackett*, 486 F.3d at 233.

335.072. Accordingly, the officers did not have unfettered discretion in ordering the impound of Ballard's vehicle; rather, this action was done pursuant to a reasonable and mandatory police department practice.

Ballard's next argument, that the police unconstitutionally impounded his vehicle because it was legally parked, is also easily rejected. As noted above, Ballard's vehicle was parked on a public street and could not be removed by Ballard or a third-party. Therefore, the decision to follow police department policy and impound the vehicle was reasonable for safety and traffic purposes. *See Harvey*, 16 F.3d at 112 ("[T]he police lawfully exercised their discretion in deciding to impound the vehicle in the absence of any licensed driver to attend to it, and they followed departmental policy in doing so."); *Collins v. Nagle*, 892 F.2d 489, 494 (6th Cir. 1989) ("[The Fourth Amendment] inquiry does not require a determination of whether there was in fact a need . . . to impound the truck; instead we are required to determine whether the . . . decision to impound was reasonable under the circumstances."); *United States v. Griffin*, 729 F.2d 475, 480 (7th Cir. 1984) (noting that it was reasonable to tow a vehicle that "would have been otherwise left unattended, possibly for an extended period, in close proximity to the traveled portion of a busy, high speed roadway"). Moreover, there is no evidence indicating that the officers impounded Ballard's vehicle in order to perform an inventory search and discover evidence of criminal activity. *See Opperman*, 428 U.S. at 376 (holding that an inventory search was constitutionally permissible in part because there was "no suggestion" that the search "was a pretext concealing an investigatory police motive").

IV.

In sum, the district court did not err in denying Ballard's motion to suppress. The impound and inventory search of his vehicle were reasonable and performed in accordance with police department policy and procedure, thereby complying with the Fourth Amendment. Accordingly, the evidence discovered during the search, and any statements derived therefrom, were properly admitted and considered by the district court.[6] For these reasons, we affirm the district court's judgment.

---

[6]Because there is no Fourth Amendment violation, we need not address Ballard's assertion that his voluntary statements should be suppressed as "fruit of the poisonous tree." While Ballard makes passing comments regarding the *Miranda* violation that took place following the officers' discovery of the firearm, he makes no meaningful arguments regarding whether such a violation requires the suppression of any subsequent voluntary statement. Accordingly, this argument is forfeited. *See Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 321 (6th Cir. 2010) (internal quotation marks and citation omitted) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Moreover, any such argument would be meritless. *See Oregon v. Elstad*, 470 U.S. 298, 308 (1985) (holding that a "noncoercive *Miranda* violation" does not require suppression of subsequent voluntary statements as "fruit of the poisonous tree").