**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0365n.06

No. 15-5861

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jun 30, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff – Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| JOSE MANUEL JIMENEZ, | ) | |
| | ) | **OPINION** |
| **Defendant – Appellant.** | ) | |
| | ) | |

**Before: KETHLEDGE, WHITE, and DAVIS,** Circuit Judges.

  **ANDRE M. DAVIS, Senior Circuit Judge.** A jury convicted Appellant Jose Manuel Jimenez of methamphetamine distribution and conspiracy to distribute methamphetamine. The convictions arose from a controlled buy arranged by investigating officers. Twice before trial, Jimenez moved to suppress the physical and testimonial evidence against him, arguing that the officers lacked probable cause for his arrest and, somewhat belatedly, for a search of a vehicle. The district court denied both motions. Jimenez now appeals, challenging the denial of his first motion to suppress. For the following reasons, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

**A.  Facts**

  Detectives with the McCracken County Sheriff's Department in Kentucky first encountered Jimenez in 2013 while investigating another target, Jimmy Boggess. The detectives

---

  *The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

had charged Boggess with methamphetamine distribution in 2012, but he had absconded while free on bond. Through discussions with confidential informants, Sergeant Jesse Riddle learned that Boggess had fled to Mexico and continued to traffic drugs. In May 2013, detectives spoke with Rachel Harris, Boggess's ex-girlfriend. Harris, who had worked with the Sheriff's Department as a confidential informant on one earlier occasion, told the detectives that she could contact Boggess and agreed to cooperate with their investigation.

On May 14, 2013, at the behest of the detectives, Harris arranged a drug deal with Boggess over multiple phone conversations. Sergeant Riddle and Detective Ryan Norman monitored the calls. The officers recognized Boggess's voice from their previous interactions with him. During the calls, Boggess arranged to have methamphetamine delivered to Harris in McCracken County the following day. Harris agreed to pay $40,000 upon delivery of the drugs and then wire an additional sum of money directly to Boggess in Mexico.

Boggess told Harris that a contact from Arkansas would bring the methamphetamine to Kentucky, leaving sometime after 4:00 or 5:00 p.m. on May 15, and that Harris needed to choose a delivery location with a garage or shed because the drugs would be well-hidden, and the contact would need up to an hour to retrieve the drugs. Harris told Boggess, "Have your delivery guy come to 1830 Fisher Road." R. 63 Suppression Hr'g Tr. 43 (Page ID #159). The address was the site of an abandoned house in McCracken County that the Sheriff's Department had used in earlier drug investigations. The house had been vacant for so long that it lacked street numbers, and the detectives had to erect a road sign to identify it. To make the calls to Boggess,

2

Harris used a cellphone provided by the Sheriff's Department with the number (270) 556-1429. She did not give the number to anyone other than Boggess.

On May 15, 2013, a man later identified as Appellant Jimenez called Harris at that number, told her that he had obtained the number from someone in Mexico, and said that he would be arriving at Fisher Road in about thirty minutes.[1]  Later that day, Harris received another call on the Sheriff's Department cellphone.  The unidentified person on the call described the delivery vehicles as a white Toyota Corolla and a white Dodge Durango and said that the convoy was about a minute away.  The detectives had been surveilling the location, and about a minute after the second call, around 9:30 p.m., they saw a white Corolla with Arkansas plates and a white Durango with Tennessee plates arrive at 1830 Fisher Road.  At that point, Sergeant Riddle and Detective Norman arrested the individuals in the cars.[2]

Jimenez was driving the Corolla.  Four people were in the Durango, which was registered to Jimenez's ex-girlfriend.  The driver of the Durango, Angelica Benitez, admitted that she had called Jimenez several times during the trip.  She gave the officers her phone, which showed calls to Jimenez's number.  Jimenez's number matched the one that had called Harris on the Sheriff's Department cellphone.

After arresting the individuals in the cars, the detectives performed a drug-dog sniff, and the dog alerted to the presence of narcotics in both cars.  As a result, the detectives impounded

---

[1] At the time of the call, the identity of the caller was unknown.  Sergeant Riddle, however, testified during the suppression hearing that he was later able to recognize the voice as Jimenez's based on having monitored Jimenez's phone calls in jail and through limited conversations with him.

[2] Both officers testified that they had arrested Jimenez at this time.  As explained below, we consider this to be the moment of Jimenez's arrest for the purposes of this appeal.

the cars, obtained a search warrant, and searched the cars early the next morning. In the Corolla, the detectives recovered a tool kit with a set of small ratchets. They also recovered three phones in the passenger seat, one of which had a bent SIM card. In the Durango, the detectives found a GPS device that had been programmed to navigate to 1830 Fisher Road. Although the detectives did not find drugs in either vehicle, the drug-sniffing dog continued to alert to the presence of narcotics in the fender area of the Durango.

The detectives pursued a charge of conspiracy to traffic methamphetamine in Kentucky state court. Late in May 2013, the detectives received a tip from Jerry Purvis, an individual detained at the McCracken County Detention Center, that led to the discovery of drugs in the Durango. While in pretrial detention, Jimenez admitted to Purvis that he had transported four pounds of methamphetamine and that he had hidden the drugs in an area of the Durango that would take about an hour to reach. Jimenez told another detainee that he had been sent from Arkansas to deliver the drugs, that Boggess had set him up, and that he had heard a loud boom before his arrest. The description of the loud boom corroborated the use of a "flash-bang" explosive device by the detectives during the arrest, a fact that the Sheriff's Department had not revealed to the public. After Purvis told the detectives about Jimenez's admission, they obtained a search warrant and, on July 5, 2013, uncovered 1,719 grams of methamphetamine in the Durango using the tools they had found in the Corolla. After finding the drugs, the detectives referred the case to federal authorities.

B.      **Procedural History**

On September 17, 2013, a federal grand jury in the Western District of Kentucky indicted Jimenez and three codefendants for possession of methamphetamine with intent to distribute and aiding and abetting in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.  R. Indictment (Page ID #1).

Jimenez moved to suppress "any physical and testimonial evidence" obtained after his arrest and during the July 2013 search of the Durango that had produced the methamphetamine. R. 50 Def.'s Mot. Suppress 1 (Page ID #85).  The district court held a suppression hearing on May 6, 2014.  During the hearing, Jimenez conceded that he lacked standing to contest the July 2013 search of the Durango.  Sergeant Riddle and Detective Norman testified about the investigation and circumstances of Jimenez's arrest.  On June 23, 2014, the district court determined that, "in view of the totality of the circumstances," the detectives had probable cause for the arrest and denied the motion to suppress.  R. 69 Mem. Op. & Order 15 (Page ID #216). The district court explained that the drug deal had been arranged by a cooperating witness, Harris, who had established her credibility by providing detailed information, almost all of which turned out to be true.  Jimenez arrived at the particular time and place "consistent with the particular details of the transaction arranged between the cooperating witness and Boggess," thus "corroborat[ing] most if not all of the key elements of the transaction" by the time of his arrest. *Id.* at 13 (Page ID #214).

On October 14, 2014, the grand jury issued a superseding indictment charging Jimenez and two codefendants with two counts: (1) possession of methamphetamine with intent to

distribute and aiding and abetting in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C), and 18 U.S.C. § 2; and (2) conspiracy to distribute fifty grams or more methamphetamine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C), and 846. Now represented by successor counsel, Jimenez filed another motion to suppress, this time seeking to exclude the evidence obtained from both the Corolla and the Durango and arguing that the officers lacked probable cause for his arrest and for the subsequent searches.[3] On March 20, 2015, the district court denied the motion, concluding that, because Jimenez arrived at the scene consistent with how Harris had described the deal in advance, the detectives had probable cause to search both vehicles. The district court also concluded that Jimenez did not have a reasonable expectation of privacy in the Durango because he was neither the driver of the vehicle nor a passenger in it.

Following trial, a jury convicted Jimenez of both counts in the superseding indictment. On July 28, 2015, the district court sentenced Jimenez to concurrent terms of 262 months' imprisonment for each count, followed by concurrent terms of 10 years' supervised release for each count. Jimenez timely appealed.

## II. ANALYSIS

On appeal from the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012) (citing *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007)). We

---

[3] Jimenez also sought to suppress conversations between him and his wife that were recorded over the phone at the McCracken County Detention Center, as well as testimony identifying him as the voice behind the initial call to Harris. The district court declined to suppress that evidence, and Jimenez does not challenge that decision on appeal.

review the evidence in the light most favorable to the government. *Id.* (quoting *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006)).

Jimenez argues that the detectives lacked probable cause for his arrest.[4] We disagree. The Fourth Amendment permits a warrantless arrest where there is probable cause for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause exists where the facts, at the time of the arrest, were sufficient to lead a prudent person to believe that a crime had been committed or was in the process of being committed. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (quoting *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997)). The probable cause determination depends on the reasonable conclusions "drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152 (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Based on the testimony of Sergeant Riddle and Detective Norman during the suppression hearing, the district court concluded, and both parties acknowledge on appeal, that Jimenez's seizure upon arrival at 1830 Fisher Road constitutes his arrest. Accordingly, we conclude that, for the purpose of this analysis, Jimenez was arrested upon arriving at 1830 Fisher Road.

It is important to distinguish between what the detectives knew at the time of the arrest and the information they gathered afterward. At the time of Jimenez's arrest, the detectives knew that Harris, their confidential informant, had arranged a drug deal with Boggess, who had

---

[4] Jimenez does not appear to contest any of the subsequent searches directly. Nor does he directly challenge the validity of the warrants that the detectives had obtained before the May 16, 2013 search of both cars and the July 2013 search of the Durango. Instead, he argues that any evidence gathered after his arrest should be suppressed as fruit of the poisonous tree. Because we conclude that the detectives had probable cause for his arrest, we need not explore that argument.

fled to Mexico to avoid prosecution for drug trafficking. They had monitored phone calls between Harris and Boggess as the two planned the delivery of methamphetamine. They knew that Boggess's contact would come from Arkansas on May 15, departing after 4:00 or 5:00 pm. The detectives knew that the contact would call Harris on the Sheriff's Department cellphone prior to arrival; and given the length of the drive between Arkansas and Kentucky, they also knew he would arrive later in the evening.

The detectives knew that Harris had given Boggess the address of a vacant house, 1830 Fisher Road, used by the Sheriff's Department specifically for drug investigations. The house had been abandoned so long that the Sheriff's Department had fabricated the street number and posted a fake street sign to identify it. As forecasted, the contact called Harris before arriving, letting her know that the convoy was about a half hour away–and later, roughly one minute away–and that they would be driving a white Corolla and a white Durango. The detectives then observed cars matching that description, one bearing Arkansas plates, arrive at 1830 Fisher Road late in the evening and found Jimenez driving the Corolla. Given those circumstances, a reasonably prudent person would likely believe that Jimenez arrived at 1830 Fisher Road at that time and in that vehicle to participate in an illegal narcotics transaction.

Jimenez challenges the existence of probable cause on three grounds, none of them persuasive. First, Jimenez challenges the credibility of Harris as a confidential informant. This argument is unavailing because Harris was a known cooperating witness entitled to a presumption of credibility. *See United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc) ("[W]here a known person . . . to whose reliability an officer attests with some detail,

8

states that he has seen a particular crime and particular evidence," probable cause may exist.). Although she had only worked with the detectives on one prior occasion, much–if not all–of the information she provided about Boggess's drug trafficking activity and the arranged drug deal proved to be accurate. Harris provided the meeting address, time, and location, as well as the number of vehicles, the convoy's Arkansas starting point, and a description of the vehicles. Thus, as the district court concluded, Harris "had established herself as a reasonably reliable and credible informant" by the time Jimenez was arrested. R. 69 Mem. Op. & Order 12–13 (Page ID #213–14).

Next, Jimenez argues that the detectives had no conclusive information that Jimenez arrived to commit a crime. To be sure, at the time of Jimenez's arrest, the detectives did not have any specific information connecting Jimenez with Boggess or drug trafficking. Jimenez's name had not been mentioned during any of the phone calls between Harris and Boggess, nor did the detectives have evidence of any direct contact between Boggess and Jimenez. The calls between Harris and the members of the convoy did not mention money or drugs, and the detectives had not yet learned that Jimenez's number had called the Sheriff's Department cellphone.

Probable cause, however, "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Ogbuh*, 982 F.2d 1000, 1002 (6th Cir. 1993) (quoting *United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989)). This principle reveals the flaw inherent in Jimenez's argument: the mistaken belief that probable cause requires concrete proof of criminal activity. Not so. *See United States v. Strickland*, 144

F.3d 412, 415 (6th Cir. 1998) ("[T]he Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect."). Rather, the Fourth Amendment requires "that the officers be able to articulate concrete facts from which they *infer* a probability that illegality has occurred" or is currently occurring. *Id.* (emphasis added). Indeed, we held in *Strickland* that "the corroboration of a certain amount of information provided by an informant can be sufficient to establish probable cause to arrest and search a criminal suspect," even where officers had not yet uncovered conclusive proof of criminal activity. *Id.* at 414, 417. There was much more than a small probability of criminal activity given the circumstances here.

Finally, Jimenez argues that it was unfair to presume that he had arrived at 1830 Fisher Road to commit a crime given the various other reasons he could have been there–for example, "to socialize with [Harris]" or "perhaps to sell one of the cars." Appellant's Br. 18. This is fanciful. We noted in *Strickland* that "[t]he more unusual the occurrences are that the police are able to confirm, the stronger the showing of probable cause." *Strickland*, 144 F.3d at 417. Although a narrative showing that Jimenez harbored a legal purpose for his presence in Kentucky at the time of his arrest could surely be conjured, none could undermine the strength of the probable cause showing of an intended drug deal reflected in this record. As the district court explained (with considerable understatement), to believe that Jimenez had arrived for another purpose other than to traffic drugs "would appear exceedingly unlikely under these circumstances." R. 69 Mem. Op. & Order 14 (Page ID #215). We are satisfied, as was the

district court, that the facts available to the detectives at the time of Jimenez's arrest were sufficient to establish probable cause for his arrest.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.