RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0103p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

BRANDON LEE ALEXANDER,

　　　　　　　　　　　　*Defendant-Appellant*.

No. 19-5607

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:18-cr-00034-13—J. Ronnie Greer, District Judge.

Decided and Filed:  April 1, 2020

Before:  STRANCH, BUSH, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Jerry W. Laughlin, LAUGHLIN, NUNNALLY, HOOD & CRUM, PC, Greeneville, Tennessee, for Appellant.  J. Christian Lampe, UNITED STATES ATTORNEY'S OFFICE, Greeneville, Tennessee, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge.　In this Fourth Amendment case, Brandon Alexander raises three issues: (1) the admissibility of drug evidence obtained from two vehicle searches; (2) the admissibility of a firearm recovered pursuant to a warrant to search a locked safe found during one of the vehicle searches; and, (3) his classification as a career offender under the United States Sentencing Guidelines.  The Government concedes that based on *United*

*States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), Alexander's sentence should be vacated, and his case remanded for resentencing without the career-offender enhancement. The remaining issue is whether the two vehicle searches withstand Fourth Amendment scrutiny. They do, and we **AFFIRM** the district court's denial of the motions to suppress but do so based on a different rationale. We **VACATE** Alexander's sentence and **REMAND** the case to the district court for resentencing.

## I. BACKGROUND

Detective Pete Shockley of the Morristown Police Department ("MPD") was investigating whether methamphetamine was being sold at 712 Baker Street, Morristown, Tennessee—home to the mother of Brandon Alexander. During the investigation, Shockley learned that Alexander's driver's license was suspended. On April 24, 2017, Shockley saw Alexander leave the house and drive away in a Ford SUV; Shockley pulled him over. The propriety of the traffic stop is not in dispute on appeal. When Shockley approached the SUV, he saw a zippered bank deposit bag on the front passenger seat; he testified that it appeared to have "a large quantity of money in it." He also noticed a safe in the backseat with a digital keypad. Shockley asked Alexander for permission to search the vehicle, but Alexander refused. Shockley took Alexander into custody for driving on a suspended license, and then conducted a "cab to trunk" search of the vehicle, which turned up a baggie with methamphetamine residue, drug paraphernalia, and over $11,000 in cash in the bank deposit bag. Shockley shortly thereafter found 35 grams of methamphetamine in Alexander's waistband. The SUV was towed pursuant to MPD policy. Alexander was released on bond. The next day, Shockley obtained a warrant for the safe and discovered a loaded pistol and Alexander's wallet.

The next search occurred on May 3, 2017. Shockley, again posted outside 712 Baker Street, saw Alexander leave the house—this time in a Lincoln—and called ahead to a different officer, who then made a traffic stop. Shockley arrived and arrested Alexander pursuant to a warrant for possessing the firearm found on April 25 and for driving on a suspended license. When asked if the officers could search the Lincoln, Alexander responded, "I don't care," although he later testified that this statement did not constitute consent to conduct the search. Shockley again performed a roadside search of the full vehicle, and the Lincoln was towed

pursuant to MPD policy. This time he found a WD-40 container with a false bottom that contained 113 grams of methamphetamine.

A federal grand jury indicted Alexander on two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(B); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g).[1] These charges were based on evidence obtained from the two vehicle searches. Alexander moved to suppress the fruits of both stops and an evidentiary hearing was held before a magistrate judge. Though the State argued that the searches were justified by Alexander's consent and as valid inventory searches, the magistrate judge upheld both searches on the sole ground that they were properly conducted inventory searches. The district court adopted the Report & Recommendation and found that the searches were proper under the inventory search exception to the warrant requirement. Alexander proceeded to trial and a jury convicted him on the four counts of drug and firearm charges. Classified as a career offender under U.S.S.G. § 4B1.2(b), he was sentenced to 216 months' incarceration.

Alexander seeks review of the district court's denial of his motions to suppress the evidence obtained from the vehicle searches and of his classification as a career offender.

## II. ANALYSIS

### A. Standard of Review

"When reviewing [a] district court's ruling on a motion to suppress, we review findings of fact for clear error and legal conclusions de novo." *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012) (citing *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007)). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (quoting *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)). "[I]f the district court's

---

[1]Alexander was initially charged with additional offenses, but they were dismissed by the United States before trial.

conclusion can be justified for any reason," we must affirm.  *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994).

**B. Discussion**

1. Motions to Suppress

The district court denied Alexander's motions to suppress evidence discovered on April 24 and May 3, 2017, on the basis that the evidence was found during valid inventory searches. An inventory search is a recognized exception to the Fourth Amendment's warrant requirement: where the police are in lawful custody of a vehicle, they may conduct an inventory search to catalogue its contents pursuant to standardized criteria.  *Florida v. Wells*, 495 U.S. 1, 4 (1990); *see also Colorado v. Bertine*, 479 U.S. 367, 375-76 (1987).  The purpose is "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."  *United States v. Smith*, 510 F.3d 641, 650-51 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)).  An inventory search must not be undertaken "for purposes of investigation and must be conducted according to standard police procedures.  However, the fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search."  *Lumpkin*, 159 F.3d at 987 (citation omitted).  The critical point here is that inventory searches are valid only to the extent that officers follow a "'standardized criteria . . . or established routine' to assure that inventory searches are not a 'ruse for a general rummaging in order to discover incriminating evidence.'"  *United States v. Hockenberry*, 730 F.3d 645, 659 (6th Cir. 2013) (quoting *Wells*, 495 U.S. at 4).  We have held that while such a policy must be sufficiently well-defined, it does not necessarily have to be written.  *Tackett*, 486 F.3d at 233.

In this case, it is undisputed on appeal that MPD had an adequate policy in place for *when* officers could conduct an inventory search—and that Shockley properly applied the policy as he awaited the tow truck.  The parties agree that a policy must be in place governing both when impoundment is proper and the scope of the "actual performance of an inventory search," such that the search is "'sufficiently tailored to only produce an inventory.'"  *Hockenberry*, 730 F.3d at 659 (quoting *Jackson*, 682 F.3d at 455).  "In conducting an inventory search, officers do not

enjoy their accustomed discretion; they simply follow the applicable policy." *Tackett*, 486 F.3d at 232. In *Wells*, the record contained no evidence that the Florida Highway Patrol had a policy addressing whether closed containers should be opened during a vehicle search; "absent such a policy," the Supreme Court held, the "search was not sufficiently regulated to satisfy the Fourth Amendment." 495 U.S. at 5; *see also United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993).

Alexander argues that there was no MPD policy that specified the scope of inventory searches—how they were to be conducted—and that an officer's discretion cannot be unfettered. The Government contends that MPD had a policy in place governing the scope of inventory searches, albeit one that was never reduced to writing. On direct examination, Shockley was asked: "When you decide to conduct . . . an inventory search prior to towing, . . . what procedures [do] you usually follow and what places [do] you search?" He replied: "I search from cab to trunk." The Government argues that, coupled with the written guidance for when it is permissible to conduct an inventory search, Shockley's testimony is sufficient to demonstrate a "settled practice" of the Morristown Police Department concerning the scope of inventory searches performed by its officers. The magistrate judge found—and the district court agreed—that Shockley followed an established routine when conducting the searches in question. The Government argues that this finding was not clearly erroneous.

Our caselaw does not require a police department's inventory search practices to be maintained in a written policy. *See Tackett*, 486 F.3d at 233. *Wells* and its Sixth Circuit progeny, however, are clear that there must be some set of guiding principles that govern the scope of inventory searches. *Wells*, 495 U.S. at 4. Police departments have wide latitude in devising such regulations, *see id.*, but some parameters are necessary so that the scope of the search does not fall to roadside discretion. *See, e.g., Jackson*, 682 F.3d at 455-56 (outlining the scope of a permissible inventory search pursuant to Akron, Ohio, Police Department regulations). Here, there is no department-issued inventory search regulation in the record and Shockley testified only to his own practice for conducting inventory searches "from cab to trunk." His testimony did not mention any standard procedures for how inventory searches are performed. *Hockenberry*, 730 F.3d at 659; *Marshall,* 986 F.2d at 1175. Even though there

existed regulations governing *when* inventory searches were permissible, there were no established procedures that governed *how* the inventory searches were to be conducted.[2] Without any evidence of "standardized criteria" or "established routine" governing the scope of the inventory searches, we must conclude that the searches were conducted with "uncanalized discretion." *Wells*, 495 U.S. at 4. The Constitution requires stricter limits. *Id.* The inventory search exception to the requirement of a warrant does not apply here.

The question remains, however, whether a different exception to the warrant requirement applies to Shockley's actions. The Government argues that the evidence obtained on April 24 would inevitably have been discovered. *See Nix v. Williams*, 467 U.S. 431, 440-48 (1984). The inevitable-discovery doctrine requires us to determine, "viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995) (quoting *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992)). Because the officers planned to arrest Alexander for driving on a suspended license on April 24, the Government contends that police would have found the drugs in his waistband, which would have led to a subsequent vehicle search justified under the search incident to arrest doctrine or the automobile exception to the warrant requirement. Alexander does not specifically address this argument in his opening brief on appeal and he did not file a reply.

The inevitable-discovery doctrine salvages the April 24, 2017 search. Shockley said he intended to arrest Alexander for driving on a suspended license, undisputedly an arrestable offense. Although the vehicle search occurred before Shockley's discovery of the drugs in Alexander's waistband, he inevitably would have discovered the methamphetamine when he arrested Alexander. That discovery in these circumstances would have justified the vehicle search under at least one of the Government's alternative theories.

---

[2]Even when there is an appropriate policy in place, inventory searches run afoul of the Fourth Amendment if they are performed only for the purpose of investigation. *See, e.g.*, *United States v. Hurst*, 228 F.3d 751, 758 (6th Cir. 2000). But Alexander does not argue that Shockley "acted in bad faith or for the sole purpose of investigation." *United States v. Vite-Espinoza*, 342 F.3d 462, 470 (6th Cir. 2003).

Assuming that, upon finding the methamphetamine, police would have arrested Alexander for drugs as well as the driving infraction, the vehicle search was a valid search incident to arrest. Police may conduct a search of a vehicle incident to a lawful arrest "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Arizona v. Gant*, 556 U.S. 332, 343, 347 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)); *see also United States v. Bennett*, 439 F. App'x 501, 504 (6th Cir. 2011). Here, it would have been reasonable for Shockley to conclude that relevant evidence relating to the drug arrest might also be in the vehicle, which would have provided a valid basis for the search.

Alternatively, the methamphetamine—viewed in conjunction with the bag of money visible to Shockley from outside the vehicle—would have established the probable cause necessary to conduct a search of the vehicle pursuant to the automobile exception. *See California v. Carney*, 471 U.S. 386, 392-93 (1985); *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012) ("Under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." (citing *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998))).

Although the April 24 roadside search was not a valid inventory search, the inevitable-discovery doctrine applies because the evidence obtained would have been discovered by a search that was justified as incident to a lawful arrest or pursuant to the automobile exception.

Alexander next asserts that the warrant for the locked safe taken from the vehicle on April 24 was not supported by probable cause. It is well-established that a search warrant must be based on facts that demonstrate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). There must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Shockley's affidavit described the evidence that was found on April 24 alongside the safe: $11,560 in cash, methamphetamine, and digital scales. Based on all the facts,

a judge found there was probable cause that the safe contained "evidence pertaining [to] illegal drug possession, illegal drug sales, illegal drug manufacturing . . . and possible weapons." Considering all the factual background and that the locked safe was found in the car with drugs and a large sum of money, it was reasonable to conclude that the safe would contain drugs or related items too. "[A] reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof" was contained in the safe. *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). The warrant was supported by probable cause. We affirm the denial of Alexander's motion to suppress the items found in the safe.

Turning to the May 7, 2017 search, the Government contends that Alexander consented to the search by responding "I don't care" to Shockley's request to search the vehicle. At the suppression hearing, Alexander testified, that "I didn't consent or refuse." "The government bears the burden of demonstrating by a preponderance of the evidence, through 'clear and positive testimony,' that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009) (citation omitted) (quoting *United States v. Worley,* 193 F.3d 380, 385 (6th Cir. 1999)). Whether the defendant provided consent "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973). And the district court's factual determination will be disturbed only if it was clearly erroneous. *United States v. Calhoun,* 49 F.3d 231, 234 (6th Cir. 1995).

Though the magistrate judge upheld the May 7 search based on the inventory search exception to the warrant requirement, it found wanting Alexander's contention that he did not consent to the search. "At the hearing," the magistrate judge explained, "Alexander attempted to clarify what he meant by . . . 'I don't care,'" claiming that he was responding "to another statement Detective Shockley had made about 'going through what he went through' during the last traffic stop." The magistrate judge found Alexander's explanation to be "disingenuous" and "his testimony to be incredible regarding this issue." Nothing in the record shows the finding that Alexander consented to the search to be clear error. We therefore affirm the denial of Alexander's motion to suppress the items found during the May 7 vehicle search.

2. Sentencing Challenges

Alexander challenges his career-offender classification. In *United States* v. *Havis*—decided after Alexander was sentenced—we held that attempt crimes do not qualify as controlled substance offenses under U.S.S.G. § 4B1.2(b). 927 F.3d at 387. Alexander's state conviction for delivery of methamphetamine under Tenn. Code Ann. § 39-17-417 was counted as a predicate offense for his career offender classification. This was precisely the statute at issue in *Havis*. *Id.* at 385. We held that because the least culpable conduct criminalized under that statute is an attempt crime, it cannot qualify as a predicate offense under § 4B1.2(b). *Id.* at 387. The Government concedes that Alexander's conviction under Tenn. Code Ann. § 39-17-417 should not count toward the § 4B1.2(b) enhancement and that absent this predicate, Alexander would not have received a career-offender classification. There is no need to reach Alexander's separate contention that his prior conviction for reckless aggravated assault is not a predicate offense. We vacate Alexander's sentence and remand the case to the district court for resentencing without the § 4B1.2(b) enhancement.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Alexander's convictions but **VACATE** his sentence and **REMAND** the case to the district court for resentencing.