NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0107n.06

No. 21-5253

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 08, 2022 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SCOTT JAMES CARRENDER, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

Before:  SILER, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge.  Wayne County Sherriff's deputies stopped Scott Carrender's vehicle and found a large quantity of methamphetamine.  Carrender moved to suppress the drugs found during the stop.  When that failed, he pleaded guilty but reserved the right to appeal the suppression ruling.  He does so now, arguing that the deputies lacked probable cause to search the vehicle and that his seizure became unlawful after the deputies unreasonably prolonged his stop. We disagree and AFFIRM.

## I.

A confidential informant contacted Wayne County deputies and told them about a drug deal at a motel in McCreary County.  The informant described the motel and named two participants whom the deputies recognized as suspected methamphetamine dealers back in Wayne County.  The informant described where the deal took place, in a room on the left-hand side of the first floor of the motel, toward the far end.  The deputies determined that the Parkland Motel fit

the description. And after talking to employees at the motel, they learned that Carrender had booked one of the rooms in the area described. No other rooms in the area were occupied.

The deputies discovered that Carrender had a parole warrant out for his arrest. The warrant said Carrender had been convicted of manufacturing methamphetamine. The deputies showed a photograph of Carrender to the housekeeper who confirmed that Carrender was staying in the room. Because no vehicle was parked out front at the time, the deputies asked the housekeeper to let them know when Carrender returned.

A few days later, the housekeeper sent a message saying that Carrender's car, a silver sedan, was back. A deputy returned to the motel and waited at a nearby restaurant; he watched as a pick-up truck arrived and parked next to the sedan. A man exited the truck, entered Carrender's room, and then returned to the truck. When the truck left, the deputy radioed another officer and asked him to stop the truck "if he had a reason to." The officer waited for the truck, watched it pass, and then fell in behind. The officer noticed that the truck had expired plates and that the driver wasn't wearing a seat belt. So the officer initiated a stop, conducted a standard field sobriety test, and arrested the driver for driving under the influence. Meanwhile, a second officer deployed his narcotics canine, which gave a positive alert on the truck. The officers found methamphetamine in the driver's pants pocket and in the doorjamb.

Back at the motel, the deputy waiting at the restaurant watched the silver sedan leave. He followed the sedan and contacted the other officers, who at that point had finished with the pick-up truck. The deputy also told the officers about Carrender's active arrest warrant. The officers caught up with Carrender and stopped him, based on the car's expired registration.

The officers recognized the driver as Carrender. As one of the officers approached the car, he saw Carrender reach down towards the center console with his "whole body." The officer thought it looked like Carrender was concealing something. The officer also saw, in the rear of the car, a Crown Royal bag with currency poking out of the top. In the officer's experience, bags like this were often used to store money, drugs, and drug paraphernalia.

The officers immediately arrested Carrender. They placed him in the back of a patrol vehicle. The officer who first approached told the others about Carrender's suspicious behavior and the Crown Royal bag. They began searching the vehicle. Near the center console, they found a bag of methamphetamine—with the same consistency of that in the pick-up truck. Then the officers discovered another bag with a large quantity of methamphetamine nestled in an instrument case in the trunk.

A grand jury indicted Carrender on two counts: possessing 500 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and conspiring to do the same in violation of 21 U.S.C. § 846. Carrender responded by moving to suppress the drugs found in his car. The district court denied the motion. Carrender pleaded guilty to the conspiracy charge but reserved the right to appeal the court's denial of his suppression motion.

## II.

When a district court denies a motion to suppress, we review its factual findings for clear-error and its conclusions of law de novo. *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019). The parties agree that the initial stop was legal because Carrender's registration was expired. They also agree that the arrest was legal because Carrender had a warrant out for his arrest. They dispute only the legality of the subsequent, warrantless search of Carrender's car.

The Fourth Amendment protects the right of the people to be secure "against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search is generally unreasonable. *See Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 438 (6th Cir. 2006). But the "automobile exception" permits a warrantless search of a vehicle when an officer has "probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020) (quoting *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012)). This exception extends to compartments and containers within the vehicle that may hold the suspected evidence. *United States v. Ross*, 456 U.S. 798, 823–24 (1982). The automobile exception plainly applies here.

An "officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution" to believe that "contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up). This test "is not reducible to 'precise definition or quantification.'" *Id.* (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). It requires only a "fair probability" upon which "reasonable and prudent" people would act. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 238 (1983)).

There was more than a fair probability that evidence of a crime would be found in Carrender's car. The officers knew that Carrender had a prior history of manufacturing methamphetamine. The informant's tip about the drug deal was confirmed when officers identified the location of the motel room, identified Carrender as the occupant, and discovered a large amount of methamphetamine in a truck whose driver had just left the room. *See Webb v. United States*, 789 F.3d 647, 663 (6th Cir. 2015) (recognizing that a tip from a reliable confidential informant "can serve as the basis for probable cause"). Carrender acted suspiciously once stopped, as if trying to hide something. And he had a bag in his car with cash sticking out, which the officers

associated with drug trafficking. Add it all up and the officers had good reason to believe that Carrender would be in possession of methamphetamine.

Carrender does not contest most of these facts. He does note that Crown Royal bags are not contraband. That is true, but the officers' experience and training told them that such bags were often used in drug trafficking. *See Texas v. Brown*, 460 U.S. 730, 746 (1983) (Powell, J., concurring in the judgment) (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Carrender does not explain why the officers' belief was improper or misinformed.

Rather than challenge the facts, Carrender points to the absence of other facts that might have bolstered the probable cause showing. For example, he notes that he was not impaired during the stop, that the officers did not use a drug dog, and that they saw no contraband in plain view. But none of these is necessary for probable cause, which is a "totality of the circumstances" test. *Harris*, 568 U.S. at 244. Because the officers had probable cause to believe Carrender's vehicle contained contraband, the search was lawful under the automobile exception to the warrant requirement.

Trying a different tack, Carrender suggests that his seizure, although lawful at the outset, "bec[a]me unlawful" when "prolonged beyond the time reasonably required to complete [the] mission" of the traffic stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). But as the district court noted, "the outstanding warrant gave law enforcement a complete and independent justification for stopping Defendant's car and arresting him." And even putting the arrest warrant to one side, a traffic stop is not unlawfully prolonged when law enforcement has "reasonable suspicion to detain the driver longer in order to investigate the other crimes." *United States v. Sheckles*, 996 F.3d 330, 345 (6th Cir. 2021). Here, as outlined above, the officers obtained

probable cause to search Carrender's car almost immediately upon stopping him. Carrender was not unlawfully detained while the officers continued the search.

\* \* \*

We AFFIRM.