NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0253n.06

Case No. 22-1365

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 05, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| TYRUN DUNDRE WILLIAMS | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: MOORE, McKEAGUE, and MATHIS, Circuit Judges.

**McKEAGUE, Circuit Judge.** Police arrested Defendant Tyrun Williams and subsequently searched his vehicle, uncovering drugs and firearms. Williams argues the search should be suppressed as it was done in bad faith and without probable cause. Because the officers had probable cause to arrest Williams for driving under the influence, we affirm the district court's denial of Williams' suppression motion.

**I.**

The events at the heart of this matter began with a traffic stop on March 27, 2021. On that date, Defendant Tyrun Williams was pulled over by Lansing Township Police Department Officer Evan Grundner for driving 63 miles per hour in a 40-mile-per-hour zone. Grundner had also observed Williams' vehicle crossing over the yellow line while moving into the turning lane. Williams' teenaged daughter was in the passenger seat. As Grundner spoke to Williams, he saw

a firearm on the floor of the car, propped against the center console. He called for backup. Williams informed Grundner that he had a Concealed Pistol License, and provided him with the paperwork. Then Grundner's sergeant, Brett Ramsden, arrived on the scene.

Around this time, Grundner and Ramsden saw an open can of beer in the center console of the car. Grundner asked Williams to exit the vehicle; as Williams moved a Taco Bell bag out of his lap, another firearm became visible there. Grundner secured the firearm and again directed Williams to exit the vehicle. Grundner handcuffed Williams and placed him in his patrol car, then returned to Williams' vehicle and asked Williams' daughter to check the glove compartment for any paperwork. When she did so, Grundner saw several firearm magazines inside the compartment.

Grundner next went to Ramsden's patrol car and silenced his body camera. Grundner alleges he did this because he wanted to have a "sidebar" conversation with Ramsden "to see if . . . there was anything that [Ramsden] knew or saw that [Grundner] didn't[.]" R. 68 at PID 342. Ramsden tried but failed to silence his own camera. The following exchange was then recorded by Ramsden's camera:

Grundner: He's talking about not searching his vehicle.

Ramsden: It's up to you.

Grundner: I don't have grounds to search his vehicle unless we tow it. And I don't understand half of what's going on in there so I'm going to run him through SFSTs [standardized field sobriety tests].

Ramsden: Okay. I'm not smelling anything on him, but…

Grundner: I'm not but he's acting kind of weird. Like not making a whole lotta sense, he seems kind of…

Ramsden: Wait for me to get out there. I'll take him out of cuffs and we'll run him through. I mean, you can give him a ticket for the open intox…

> Grundner:  I want a reason to tow his car… is what I want, that's what I'm trying to find. Let me run the VIN real quick.
>
> . . .
>
> Grundner:  Do we have a DRE [drug recognition expert] for him?  I don't think he's gonna be drunk but I think he's under the influence of something else.
>
> Ramsden:  I'm ARIDE [advanced roadside impaired driving enforcement].  But DREs are hard to come by. Are [the guns] registered to him?
>
> Grundner:  Yeah. I've got a feeling there's something…

D. 35, Ramsden BodyCam Video, 23:24:40–23:33:07.   Following this exchange, Williams' mother drove onto the scene.

While Grundner spoke with Williams' mother, Ramsden had Williams remove his sunglasses, and noticed that Williams' pupils were "constricted" and "pinpoint." Williams initially denied being on any medication, but changed his answer when asked a second time, responding that he had taken Norco[1] that morning.  Ramsden testified that Williams' speech was slow, repetitive, and "somewhat slurred." R. 68 at PID 387.

Grundner then ran Williams through several field sobriety tests, including the horizontal gaze nystagmus test, the one-legged stand test, and the walk and turn test.  Throughout these tests, Williams failed to follow instructions, stumbled, and swayed.  Following the tests, Williams was placed under arrest.  A breath test showed Williams did not have alcohol in his system. Williams consented to a blood test, which later confirmed that he was under the influence of drugs, with amphetamine and hydrocodone in his system.  After Williams' arrest, Ramsden had Williams' car

---

[1] Norco is a prescription drug that is a combination of acetaminophen and hydrocodone, the latter a Schedule 2 controlled substance. *See People v. Walker*, 2017 Mich. App. LEXIS 666, at *3 n.2 (Mich. Ct. App. 2017).  Williams alleges he had a prescription for it.  *See* Appellant's Br. at 25.

searched. Beyond the two firearms already observed, police found in the vehicle three additional firearms, multiple kinds of illegal drugs, drug paraphernalia, and loaded firearm magazines.

On June 22, 2021, during a state court preliminary hearing, the court found that the officers had probable cause to arrest Williams for operating a vehicle under the influence of a controlled substance, and that the search of Williams' car was "justified as an inventory search." R 34-3 at PID 137. Williams was referred for federal prosecution, and on June 29, 2021, a federal grand jury indicted him with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841, and possession of firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). A superseding indictment based on a subsequent search that turned up more drugs and firearms charged Williams with additional counts of possession with intent to distribute controlled substances and possession of firearms in furtherance of a drug trafficking crime.

In federal court, Williams moved to suppress the evidence found during the March 27 search of his vehicle after his arrest, arguing that the arrest and search were unconstitutional. The district court denied the motion, finding that the search was justified under three separate exceptions to the warrant requirement: the automobile exception, the search incident to arrest exception, and the inventory exception. Williams then pleaded guilty to Counts 1, 2, and 3 of the superseding indictment (two counts of possession with intent to distribute controlled substances and one count of possession of firearms in furtherance of drug trafficking), pursuant to a conditional written plea agreement. The agreement reserved his right to appeal the district court's denial of his suppression motion. Williams was sentenced to a total of 120 months' imprisonment. He timely appealed the suppression motion denial.

**II.**

We review a district court's decision regarding a motion to suppress under a mixed standard of review: de novo review for the court's legal conclusions and clear error review for its factual conclusions. *United States v. Alexander*, 954 F.3d 910, 914–15 (6th Cir. 2020). Where the district court has denied the motion, we view all evidence in a light most favorable to the government, and we must affirm "[i]f the district court's conclusion can be justified for any reason." *Id.* at 915 (quoting *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994)). Probable cause is "'reasonable grounds for belief' that a crime has been committed." *Wilson v. Martin*, 549 F. App'x 309, 310 (6th Cir. 2013) (quoting *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995)). "Whether the police had probable cause to arrest is a question of law and is therefore reviewed *de novo*." *United States v. Abdi*, 463 F.3d 547, 555 (6th Cir. 2006). When analyzing whether an arrest was supported by probable cause, we employ a "totality-of-the-circumstances approach." *United States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006).

Generally, under the Fourth Amendment, police searches must be performed pursuant to a valid search warrant. *Williams v. Maurer*, 9 F.4th 416, 431 (6th Cir. 2021). However, there are exceptions to the warrant requirement, including the search incident to arrest exception. *See Arizona v. Gant*, 556 U.S. 332, 335 (2009). Under this exception, as relevant here, "[p]olice may conduct a search of a vehicle incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Alexander*, 954 F.3d at 917 (cleaned up).[2] Thus, in order for the search of Williams' vehicle to be justified as a search incident to arrest, (1) Williams' arrest must have been lawful (i.e., supported by probable cause and not otherwise

---

[2] Under this exception, police may also search an arrestee's vehicle where the arrestee "is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. This is not relevant here because Williams was not unsecured at the time of the search.

unlawful), and (2) it must have been reasonable for the police to believe that evidence of Williams' crime of arrest would be found in his vehicle.

The district court concluded that the evidence "comfortably establish[ed] probable cause for . . . a search incident to arrest." R. 68 at PID 415. Williams does not challenge the district court's implicit conclusion that it was reasonable for the police to believe evidence relevant to driving under the influence would be found in his vehicle. He explicitly challenges only the validity of the arrest itself, arguing that it was invalid because "there was no basis to arrest Williams for driving under the influence." Appellant's Br. at 30; *see also id.* at 30 ("The issue here is not whether the search incident to arrest is valid, but whether the arrest is valid."). Thus, if we find that his arrest was supported by probable cause, then we must uphold the district court's denial of Williams' suppression motion. Looking at the evidence in the light most favorable to the government, as we must, we agree with the district court that the police had probable cause to arrest Williams for driving under the influence.

First, the police had initially pulled Williams over for speeding and crossing over the yellow line. Failure to follow traffic laws can be an indication that someone is operating under the influence. *See, e.g.*, *Meadows v. Thomas*, 117 F. App'x 397, 402–03 (6th Cir. 2004); *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 (6th Cir. 2004).

Second, the police had already seen an open intoxicant—an open can of beer—in the car, which in itself is a crime. Mich. Comp. Laws § 257.624a(1). Ramsden testified at the suppression hearing that, in his experience, most drivers with open alcohol in the car are also under the influence of alcohol or drugs. And Williams admitted to having taken Norco—a controlled

substance—that morning, further pointing towards a conclusion that he was under the influence.[3]

*See United States v. Cathey*, 485 F. App'x 119, 120–23 (6th Cir. 2012) (evidence that defendant was driving under the influence where defendant admitted to consuming hydrocodone).

Third, the police had observed (1) that Williams' pupils were pinpoint/constricted, (2) that his speech was slurred/muddled, and (3) his performance during the field sobriety tests, where he consistently failed to follow directions and stumbled and swayed. These are all signs that someone may be under the influence. *See* R. 68 at PID 390 (Officer Ramsden testifying that "[b]ased on [his] training and experience [constricted pupils are] an indication of opioid use of some type"); *id.* at PID 387 (Ramsden testifying that based on his training, slow, repetitive, and slurred speech are "indications of potential intoxication"); *Cathey*, 485 F. App'x at 120–23 (slurred speech is evidence of driving under the influence); *People v. Hammerlund*, 504 Mich. 442, 453 n.5 (Mich. 2019) (noting that "that defendant was slurring her speech and unstable on her feet could possibly provide probable cause to believe that she was under the influence . . ."); *Bradley v. Reno*, 749 F.3d 553, 555 (6th Cir. 2014) (noting that "swaying, losing [one's] balance and failing to follow basic instructions" are "signs of intoxication"); *Braun v. Vill. of Palatine,* 56 F.4th 542, 549 (7th Cir. 2022) (officers "easily" had "probable cause to believe that [a driver] had committed the offense of driving under the influence" where driver "was confused, slurred his speech, had bloodshot and glassy eyes, and had difficulty balancing," and "struggled with multiple field sobriety tests. . ."); *Green v. Throckmorton*, 681 F.3d 853, 862 (6th Cir. 2012) (noting that

---

[3] Williams argues that he was prescribed Norco but provides no case stating that a prescription for a controlled substance constitutes an excuse or defense under Michigan law to operating under the influence. Indeed, the case law indicates the opposite. *See, e.g.*, *People v. Derror*, 475 Mich. 316, 320 (Mich. 2006) ("In a prosecution under MCL 257.625(8), a prosecutor . . . need only prove that the defendant had any amount of a schedule 1 controlled substance in his or her body."), *overruled on other grounds by People v. Feezel*, 486 Mich. 184, 783 N.W.2d 67 (2010); *People v. Stevens*, 2012 Mich. App. LEXIS 1893, at *8–9 (Mich. Ct. App. 2012) (affirming conviction—challenged on other grounds—for driving under the influence of prescribed medication).

testimony indicated that constricted pupils "suggest[] possible impairment"); *United States v. Bizier*, 111 F.3d 214, 218–19 (1st Cir. 1997) ("When Trooper Curran approached Bizier, he noted that Bizier's eyes were glassy, his eyelids were heavy, his pupils were pinpoints and he was swaying. Bizier and the passenger in the truck told the troopers inconsistent stories. These factors together created probable cause for a driving under the influence arrest."). While Williams may not have outright failed all of the sobriety tests, and some may have been administered with slight defects, as Williams argues, his overall behavior during them still indicates intoxication. *Cf. People v. Cloutier*, 2016 Mich. App. LEXIS 1704, at *9–10 (Mich. Ct. App. 2016) ("Although defendant attacks the accuracy and results of each individual field sobriety test given to him, to find probable cause it is not necessary for the results of each and every test to be conclusive and positive. Rather, in evaluating the validity of a stop or an arrest, we must consider 'the totality of the circumstances—the whole picture.' . . . Common sense and ordinary human experience must govern over rigid criteria." (quoting *United States v Sokolow*, 490 U.S. 1, 8 (1989))).

Williams' main counterargument—that the recorded conversation between Grundner and Ramsden indicates that they subjectively believed they did not have probable cause to arrest for driving under the influence and were acting in bad faith in order to search the vehicle—is misplaced, for two reasons. First, the exchange is not as clear-cut as Williams makes it out to be. In fact, during the exchange, Grundner explicitly stated: "I don't understand half of what's going on in there" and "I think he's under the influence of something [other than alcohol]." D. 35, Ramsden BodyCam Video, 23:24:40–23:33:07. These statements indicate that Grundner truly believed Williams was behaving as if he was under the influence, even if Grundner was also driven to arrest Williams at least partially by a desire to search Williams' car. As Grundner explained at the suppression hearing, at the time of the conversation he felt "overwhelmed with the unknowns

of the firearms being in the vehicle and was kind of thrown off by that," and he thought Williams may be intoxicated due to his behavior: "inability to follow directions, inability to complete sentences, kind of slurring his words, kind of all over the place." R. 68 at PID 343–44.

Second, even if the officers were solely driven by a desire to search Williams' vehicle and did not believe that they had probable cause or that probable cause could be obtained, their subjective intent is irrelevant to this inquiry. *See, e.g., Whren v. United States*, 517 U.S. 806, 811–13 (1996); *Bond v. United States*, 529 U.S. 334, 338, n.2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment . . . the issue is not his state of mind, but the objective effect of his actions."); *Arkansas v. Sullivan*, 532 U.S. 769, 771–72 (2001). As the Supreme Court stated in *Whren*:

> [O]nly an undiscerning reader would regard these [prior] cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred. . . . Not only have we never held, outside the context of inventory search or administrative inspection . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary. . . . We flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification. In *United States v. Robinson*, 414 U.S. 218 (1973), we held that a traffic-violation arrest (of the sort here) would not be rendered invalid by the fact that it was "a mere pretext for a narcotics search."

517 U.S. at 811–13. Thus, because the officers objectively had probable cause to arrest Williams for driving under the influence, the arrest was lawful, despite their subjective intent. And because the arrest was lawful, the search incident to arrest was lawful as well.[4]

**III.**

In sum, we AFFIRM the district court's denial of Appellant's motion to suppress.

---

[4] Because we find that the search incident to arrest exception applies, we decline to analyze the other exceptions relied upon by the district court.